**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 22 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MICHAEL DUNFEE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 79A03-1106-CR-279 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1008-FC-00041

**FEBRUARY 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Michael Dunfee appeals his sentences for operating a motor vehicle while driving privileges are forfeited for life, a Class C felony, Ind. Code § 9-30-10-17 (1993), operating while intoxicated in a manner that endangers a person, a Class A misdemeanor, Ind. Code § 9-30-5-2 (2001), and being a habitual substance offender, Ind. Code § 35-50-2-10 (2006). We affirm in part and reverse in part.

## ISSUES

Dunfee raises three issues, which we restate as:

I.      Whether the trial court abused its discretion by imposing consecutive sentences.

II.     Whether Dunfee's sentence is inappropriate in light of the nature of the offense and the character of the offender.

III.    Whether the trial court abused its discretion by ordering Dunfee to pay restitution.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of June 12, 2010, Dunfee and Tonya King returned to Tippecanoe County, Indiana, from a trip to North Carolina. King is Dunfee's ex-girlfriend and the mother of his child, and she had driven her mother's car on the trip. Upon their arrival in Tippecanoe County, they went to a bar and consumed alcohol before going to Dunfee's residence. While at his residence, Dunfee and King engaged in a verbal argument that escalated into a physical conflict. Dunfee removed King from his residence by pulling her outside. Shortly thereafter, Dunfee believed that King had his cellular phone, so he approached the passenger side of King's car as she sat in the

driver's seat. King attempted to back up the car, and, as she did so, the car's passenger side door scraped against a bush. Dunfee came around to the driver's side of the car, and King moved over to the passenger side seat. Dunfee got behind the wheel, grabbed King as she tried to get out of the car, and drove away with King's legs hanging out of the passenger side door. Witnesses observed the altercation and called the police.

Dunfee drove to King's residence. The police arrived, and the officer who interviewed Dunfee noted that he had an odor of alcoholic beverages on his person, slurred speech, and red and watery eyes. Dunfee refused to take a breath test, so the police obtained a search warrant for blood and urine samples, which was executed later that evening. Testing revealed that Dunfee had an alcohol concentration equivalent to .20 grams of alcohol per 100 milliliters of blood.

The State charged Dunfee with operating a motor vehicle while driving privileges are forfeited for life, a Class C felony, operating while intoxicated, a Class A misdemeanor, operating a vehicle with at least 0.15 grams of alcohol per one hundred milliliters of blood, a Class A misdemeanor, Ind. Code § 9-30-5-1 (2001), and being a habitual substance offender. Dunfee pleaded guilty without a plea agreement.

The trial court accepted Dunfee's guilty plea and sentenced him to eight years for operating a motor vehicle while driving privileges are forfeited for life and one year for operating while intoxicated. The trial court declined to enter a sentence on the charge of operating a vehicle with at least 0.15 grams of alcohol per hundred milliliters of blood, citing double jeopardy concerns. Next, the trial court enhanced Dunfee's sentence for operating while intoxicated by five years based on the habitual substance offender

3

enhancement, for a total sentence of six years on that charge. The trial court ordered Dunfee to serve his sentences consecutively, for an aggregate sentence of fourteen years, with six years suspended to probation. Finally, the trial court ordered Dunfee to pay $2,274.45 to State Farm Insurance Company as restitution for damage to King's mother's car. This appeal followed.

DISCUSSION AND DECISION

I. CONSECUTIVE SENTENCES

Dunfee argues that the trial court erred by ordering him to serve his sentence for operating a motor vehicle while privileges are forfeited for life consecutively to his sentence for operating while intoxicated in a manner endangering a person, which was enhanced because he is a habitual substance offender. Specifically, Dunfee contends that his sentence for operating a motor vehicle while privileges are forfeited for life is "akin to a habitual offender enhancement," Appellant's Br. p. 7, and that trial courts may not order defendants to serve two enhanced sentences consecutively.

Our Supreme Court has stated, "So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* The legislature prescribes penalties for crimes, and the trial court's discretion does not extend beyond the statutory limits. *Ratliff v. State*, 741 N.E.2d 424, 431 (Ind. Ct. App. 2000), *trans. denied*.

4

When sentencing a defendant for multiple convictions, "the court shall determine whether terms of imprisonment shall be served concurrently or consecutively." Ind. Code § 35-50-1-2(c) (2008). Dunfee is correct that a trial court cannot order consecutive habitual offender sentences. *Breaston v. State*, 907 N.E.2d 992, 994 (Ind. 2009). However, we reject Dunfee's claim that his conviction for operating a motor vehicle while privileges are forfeited for life is similar to a habitual offender determination. Our Supreme Court has distinguished the general habitual offender enhancement, which is governed by Indiana Code section 35-50-2-8 (2005), from "progressive penalty statutes," in which the seriousness of a particular charge can be elevated "if the person charged has been convicted of a particular offense." *Beldon v. State*, 926 N.E.2d 480, 482 (Ind. 2010). In *Beldon*, our Supreme Court specifically identified the offense of operating a motor vehicle while privileges are forfeited for life as an example of a progressive penalty offense. *See id.* at 482-83 (citing Ind. Code § 9-30-10-17). Consequently, Dunfee's claim is without merit, and the trial court did not abuse its discretion by imposing consecutive sentences upon him.

## II. APPROPRIATENESS OF SENTENCE

Dunfee asks this Court to decrease his sentences and to impose concurrent rather than consecutive sentences. His request is governed by Indiana Appellate Rule 7(B), which provides, in relevant part, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In making this determination, we may look to any factors appearing in the record. *Calvert*

*v. State*, 930 N.E.2d 633, 643 (Ind. Ct. App. 2010). Furthermore, we give due consideration to the trial court's decision and its more direct knowledge of the offense and the offender. *See Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009) (stating, "As in all sentencing, . . . we give considerable deference to the ruling of the trial court."). A defendant must persuade the appellate court that his or her sentence meets the inappropriateness standard of review. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

To assess the appropriateness of the sentence, we look first to the statutory ranges established for the classes of the offenses. Here, the advisory sentence for a Class C felony is four years, the shortest sentence is two years, and the longest sentence is eight years. Ind. Code § 35-50-2-6 (2005). Furthermore, a person convicted of a Class A misdemeanor may not be sentenced to a term longer than one year. Ind. Code § 35-50-3-2 (1977). Finally, for a defendant found to be a habitual substance offender, the trial court may enhance a sentence by no less than three years and no more than eight years. Ind. Code § 35-50-2-10. Dunfee received an aggregate sentence of fourteen years, with six years suspended to probation.

Next, we look to the nature of the offense and the character of the offender. The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *See Treadway v. State*, 924 N.E.2d 621, 642 (Ind. 2010) (noting that the defendant's crimes were "horrific and brutal"). The character of the offender is found in what we learn of the offender's life and conduct. *See Lindsey v. State*, 916 N.E.2d 230, 241-42 (Ind. Ct. App. 2009) (reviewing the defendant's

6

criminal history, probation violations, and history of misconduct while incarcerated), *trans. denied*.

Our review here of the nature of Dunfee's crimes shows that he drove a car while intoxicated at a level that was well over the legal limit. In addition, he acted callously toward King during the commission of his crimes by forcing her to stay in the car and driving away while her legs were dangling outside the passenger side door. Furthermore, Dunfee drove at a high rate of speed, endangering himself, King, and other motorists. Dunfee's behavior demonstrates a complete disregard for those around him.

Our review here of Dunfee's character shows that he has a lengthy criminal history. He has accrued nine felony convictions, including leaving the scene of an accident involving injury, operating a motor vehicle with a suspended license, two convictions for operating a vehicle while intoxicated with a prior conviction, operating a vehicle after being adjudged a habitual traffic offender, escape, and three counts of forgery. He has two prior misdemeanor convictions of operating a vehicle while intoxicated. In addition, in 2002 Dunfee was convicted of being a habitual substance offender. Furthermore, he has had his probation revoked three times. Dunfee argues that his current habitual substance offender enhancement and his conviction for operating a motor vehicle while driving privileges are forfeited for life are based on some of his prior convictions, and that his criminal history is "somewhat tempered" as a result. Appellant's Br. p. 10. We disagree. For purposes of our review of the appropriateness of Dunfee's sentence, it reflects very poorly upon him that he continues to commit the same crimes or related crimes over and over again.

7

Dunfee notes that he received the maximum possible sentence for his Class C felony conviction and asserts that he is not among "the worst class of offenders." *Id.* at 11. In stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. *Abbott v. State*, 950 N.E.2d 357, 364 (Ind. Ct. App. 2011). This designation encompasses a considerable variety of offenses and offenders. *Id.* We concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his or her character. *Id.*

In this case, Dunfee has not benefitted from lesser sentences and has repeatedly violated the terms of probation. In addition, as discussed above, the manner in which Dunfee committed his current crimes demonstrates disregard for others. Furthermore, although Dunfee pleaded guilty without the benefit of a plea agreement, during his sentencing hearing he attempted to shift some of the blame for his criminal conduct to King. Specifically, he stated that their altercation began when she threw his cellular phone at him and then subsequently refused to return it. Dunfee further stated that he drove King to her home because she "was acting insanely irrational," and King's mother and boyfriend "needed to do something about her." Tr. p. 54. Dunfee's refusal to accept full responsibility for his crimes demonstrates that he has failed to learn from his prior encounters with the criminal justice system. He has failed to persuade us that his enhanced sentence is inappropriate.

## III. RESTITUTION

Dunfee argues that there is insufficient evidence to support the trial court's restitution order for damage done to King's mother's car. The statute that governs restitution provides, in relevant part:

> In addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of . . . property damages of the victim incurred as a result of the crime, based on the actual cost of repair . . . .

Ind. Code § 35-50-5-3(a) (2006).

Restitution is a means of impressing upon a criminal defendant the magnitude of the loss he or she has caused. *Lang v. State*, 911 N.E.2d 131, 135 (Ind. Ct. App. 2009). A restitution order must be supported by sufficient evidence of actual loss sustained by the victim or victims of a crime. *Rich v. State*, 890 N.E.2d 44, 49 (Ind. Ct. App. 2008), *trans. denied*. The loss must come as a direct and immediate result of the criminal acts of a defendant. *Id.* at 51. Generally, an order of restitution is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of discretion. *Lang*, 911 N.E.2d at 135.

Here, the insurer of the car at issue submitted a claim for damage to the car, supported by a mechanic's estimate. However, the car sustained its damage before Dunfee drove it. King scraped the right side of the car against a bush as Dunfee stood near the car, after which Dunfee got into the car and drove off. There is no evidence that the car sustained any damage while Dunfee was driving. Upon a review of the record, we

9

cannot conclude that the damage to the car was a direct and immediate result of the crimes with which Dunfee was charged and to which he pleaded guilty. Therefore, the trial court abused its discretion by ordering Dunfee to pay restitution,

We do not hold that Dunfee is blameless for the damage to King's mother's car. We simply hold that the damage was not the result of the crimes for which he was convicted. As a result, restitution is inappropriate in this case, and we reverse that portion of the trial court's judgment.

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court in part but reverse the trial court's order of restitution.

Affirmed in part and reversed in part.

MATHIAS, J., and BARNES, J., concur.